WILLIAM C. HUNNEMAN & others *vs* INHABITANTS OF GRAFTON.

The town of G., at a legal town meeting, voted to procure two fire engines, and chose a committee to purchase them, at a price not exceeding $2000: A motion was then made to reconsider the vote, and it was voted not to reconsider it, and the meeting was then adjourned: The committee made a contract with H. to construct two engines for $1974, and to pay him in two town orders, each payable on time, with interest: It was a part of the contract, that H. should deliver the engines, when completed, to a certain carrier, and the committee also agreed with the carrier for the transportation of the engines to the town of G.: After this contract was made, and before the time to which said town meeting was adjourned, another meeting of the town was held, at which it was voted to reconsider the vote passed at the first meeting, and a committee was chosen to inform H. of the last vote, and to settle with him; and this committee informed H. accordingly: At the adjournment of the first meeting, it was voted to discharge the committee, that had been chosen to purchase the engines, from any further duties: H. made the engines, and delivered them to the carrier, according to the contract, and the carrier transported them to the town of G., and the town refused to accept them, and also refused, though requested by H., to deliver to him the town orders in payment: H. sued the town for the price of the engines, in an action of indebitatus assumpsit, commenced before the time when either of the town orders was to have been made payable. *Held*, that the committee chosen at the first meeting had authority to make said contract with H., and that it was not affected by the subsequent votes of the town, but was binding on the town. *Held also*, that H. could not maintain his action, as brought, but that his only remedy, before the expiration of the time when the town orders were to have been payable, was by an action for the breach of the special contract.

INDEBITATUS ASSUMPSIT for two fire engines sold and delivered. Writ dated July 11th 1844. Trial before *Wilde*, J. whose report thereof was as follows:

Evidence was given, that at a legal meeting of the defendants, on the 11th of March 1844, it was voted to procure two

fire engines, and that a committee of five was chosen to pur-
chase the same ; that a motion was then made to reconsider
said vote, and it was voted not to reconsider it ; that it was
then voted to instruct said committee not to exceed the sum
of two thousand dollars, in procuring said engines and fix-
tures necessary for the same ; and that it was then voted to
adjourn the meeting to the 25th of said March, at *two o'clock*
P. M. : That said committee, before the 25th of said March,
made a contract with the plaintiffs to furnish two fire en-
gines, for the sum of $1974, to be delivered at the depot of
the Boston and Worcester Rail Road Company, in Boston, to
be paid for on delivery, in town orders, payable on the 31st
of December 1844 and the 31st of December 1845, with
interest : That the engines were made by the plaintiffs, and
delivered agreeably to the said contract : That the said
committee made a contract with said rail road company, to
take the engines, on their delivery as aforesaid, and trans-
port them to Grafton, for the defendants, which was done ;
and that the engines, at the time of the trial, were in said
company's store-house in Grafton ; the defendants having
refused to receive them : That at a legal meeting of the
inhabitants of Grafton, held on the 25th of March 1844, at
*one o'clock*, P. M., it was " voted to reconsider the vote
passed at the last meeting, whereby the town voted to pro-
cure two fire engines : " It was also " voted to choose a
committee of three to inform Messrs. W. C. Hunneman &
Co. of the vote of the town, and to leave it in the hands of
the committee to settle with them, according to their best
skill and judgment : " That the defendants met at two
o'clock, on the same day, pursuant to adjournment from the
11th of said March, and " voted that the committee chosen
to procure engines be discharged from any further duties : "
That the votes passed at the meeting aforesaid, held at one
o'clock, were communicated to the plaintiffs on the 27th of
said March, by the committee then chosen for that purpose.

The plaintiffs offered to show that the aforesaid meeting,
held on the 25th of March 1844, was after they had made

some progress in the completion of their contract to make the engines.

It was in evidence that, after the delivery and transportation of the engines, as aforesaid, one of the plaintiffs demanded of the defendants the orders stipulated to be paid therefor, and that they were refused.

The judge suggested a doubt, whether the action could be maintained, and a nonsuit was entered by consent, subject to the opinion of the whole court.

*J. P. Rogers & J. J. Clarke,* for the plaintiffs.

*C. Allen & Bacon,* for the defendants.

HUBBARD, J.   It is objected that the committee to procure the fire engines could not legally proceed to act, till the meeting at which they were appointed was dissolved, as the town might, at the adjournment, reconsider their vote and rescind the power conferred ; and that in fact, at a meeting called for the purpose and held at a previous hour, on the same day with the adjourned meeting, the vote was reconsidered and the committee discharged.   And it is contended that it was incumbent on the plaintiffs to ascertain the extent of the authority of the committee to bind the town, before contracting with them, and to take notice of the adjournment.   But we are of opinion that the authority conferred upon the committee was not conditional, nor dependent on any further action of the town, on the day of adjournment ; that they, having been appointed to procure the engines, without any restriction, except as to the cost thereof, had a right to go on immediately and contract for the engines ; and that, acting within the powers given, their proceedings were binding on the town.   To have been affected by the adjournment, the subject should have been suspended, or the committee directed not to proceed till the meeting was dissolved.   An adjournment is for the purpose of acting upon matters not determined, or not yet brought forward for action, and not to revise matters disposed of and finished.   And though matters acted upon, where no step has been taken in which the rights of others are affected, may be reconsidered and rescinded ; yet

when the subject of the votes has been so far carried into effect that rights and duties have grown out of such action, the town cannot, at an adjournment of the same meeting, by a mere reconsideration of their previous act, destroy or affect any right thus vested.

. As a further answer to this objection, it is insisted by the plaintiffs that, immediately after the votes authorizing the purchase of the engines and the appointment of a committee for the purpose, a further vote was passed, that they would not reconsider those votes, and that such vote was binding on the town; so that there was no legal right to rescind them at the adjourned meeting. But the case before us requires no specific decision on the legal effect of such a vote not to reconsider. The consequence probably was, to assure the committee, as well as the plaintiffs, (if communicated to them,) that the town would not rescind their doings; but we are strongly inclined to think it could not bind the town, so as to prevent a future action thereon, if no intermediate steps had been taken. The technical rules of a legislative body, framed for its own convenient action and government, are not of binding force on towns, unless such rules have been so acted upon and enforced by the town in their regular meetings, as to create a law for themselves and binding on the inhabitants.

Again; it is argued that the committee exceeded their authority, in agreeing to give the plaintiffs, in payment, town orders payable at a future time with interest, which, when payable, would exceed $2000, and consequently that the town are not bound by the doings of the committee. But we are of opinion that the town, not having provided the committee with money to pay for the engines, nor restricted them, by the vote, to a cash purchase on delivery, they were authorized to contract for payment at a future day with interest; and whether the committee were empowered to stipulate for the town orders or not, it did not affect the contract as to price and credit given, as the price contracted for did not exceed the sum authorized by the vote.

The defendants also object to the plaintiffs' recovery in

this action, on the ground that general indebitatus assumpsit is not the proper form of declaring, but that the plaintiffs' remedy, if they are entitled to any, is by declaring specially on the contract, and alleging a breach of it by the defendants. It is contended by the plaintiffs, in answer to this objection, that having made the engines contracted for, and delivered them in pursuance of their agreement, and the town having refused to deliver the town orders in payment, nothing further remained to be done on the plaintiffs' part; and that the only duty to be performed is the payment of the cost of the engines; to enforce which the action of indebitatus assumpsit well lies.

It is certainly a well settled rule in pleading, that where there has been a special agreement, the terms of which have been performed, it is not necessary to declare specially on such agreement, but a general count of indebitatus assumpsit is sufficient. But the facts, as proved in this case, show no acceptance of the engines manufactured, but a direct refusal to receive them. While the contract was executory, the defendants revoked the authority under which it was made, and gave notice to the plaintiffs; and afterwards, upon being called upon, declined to deliver the orders, not for want of authority in the selectmen or committee to draw them, but on the ground that they were not bound by the contract of the committee.

Though the revocation of the authority, and notice thereof to the plaintiffs, and the refusal to accept the engines, furnish no substantial ground of defence to the plaintiffs' claim for damages, yet they do create an objection to the plaintiffs' form of declaring in the case. There was no acceptance of the engines. The delivery at the depot of the rail road did not, under the circumstances, constitute an acceptance. *Atkinson* v. *Bell*, 8 Barn. & Cres. 277, and 2 Man. & Ryl. 292. *Anderson* v. *Hodgson*, 5 Price, 630. Hilliard on Sales, 322.

The credit also had not expired when the action was commenced; and it has been repeatedly held, that where goods have been sold and delivered on a credit of three months, to

be paid for by a bill at two months, after the expiration of three months — thus giving five months' credit — indebitatus assumpsit will not lie, upon a refusal to give the bill, before the expiration of the term of credit ; but that the plaintiffs' remedy is for a breach of the special contract to be set out in he declaration. *Mussen* v. *Price*, 4 East, 147. *Dutton* v. *Solomonson*, 3 Bos. & Pul. 582. *Loring* v. *Gurney*, 5 Pick. 16. 1 Stephens N. P. 284. 1 Chit. Con. (5th Amer. ed.) 441, 774, and cases there cited. The remedy of the plaintiffs, therefore, is by action on the special contract, and not in indebitatus assumpsit.

It has been argued that the plaintiffs, having acted in good faith, are fairly entitled to the fruit of their labor, which can only be realized by a fulfilment of the contract on the part of the defendants. But the objection is rather nominal than substantial, as the plaintiffs will be entitled to recover in damages to the extent of the injury they have sustained.

The nonsuit is to stand, unless a motion should be made to take it off and amend the declaration. Such a motion may be granted on terms.